UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:21-cv-1098

LISA SCHICHTEL,

    Plaintiff,

v.

BMC EAST, LLC,

    Defendant.

_____/

**Complaint – Jury Trial Demanded**

    Plaintiff, Lisa Schichtel, sues Defendant, BMC East, LLC, and alleges as follows:

**Introduction**

    1.    This is a failure to accommodate and disability discrimination action brought by Lisa Schichtel (hereinafter "Plaintiff"), who suffers from blindness in one eye and impaired vision in the other, caused by congenital defects, against her former employer, BMC East, LLC (hereinafter "Defendant"). She sues under the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* (collectively referred to as "the ADA"), seeking injunctive relief, damages, attorney's fees, and litigation expenses.

**Jurisdiction, Venue, Parties and Conditions Precedent**

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a). This Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. At all times material hereto, Plaintiff lived in Flagler County, Florida, and worked for Defendant from her home until Defendant terminated her employment. Accordingly, venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 12117(a), because Plaintiff the unlawful employment practices alleged herein occurred in Flagler County, Florida, where Plaintiff worked.

4. Plaintiff, at all times material hereto, suffered from a physical impairment that substantially limited one or more major life activities, had a record of such an impairment, and was regarded as having such an impairment. Plaintiff suffers from significant visual impairments which substantially limit her ability to read and focus her eyes, as is more fully described below, and therefore, suffers from a "disability" as defined by 42 U.S.C. § 12102(1).

5. Plaintiff was, at all times material, an "employee" as defined by 42 U.S.C. § 12111(4).

6. Plaintiff was, at all times material, a "qualified individual" as defined by 42 U.S.C. § 12111(8) because she could perform the essential functions of her position with or without reasonable accommodation.

7. Defendant is a Foreign Limited Liability Company, with its principal place of business located at 2001 Bryan Street, Ste 1600, Dallas, TX 75201.

8. Defendant is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is therefore an "employer" as envisioned by 42 U.S.C. § 12111(5)(a).

9. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and this action is filed within ninety (90) days of her receipt of the notice of rights to sue.

10. All conditions precedent to the maintenance of this action have been performed or waived.

## General Allegations

11. Plaintiff suffers from congenital birth defects in both eyes and a history of significant vision problems. She has colobomas in both eyes, an optic nerve pit in one, and has undergone multiple ophthalmological surgeries, including one for a detached retina and another to remove a dense cataract.

12. At all times material hereto, Plaintiff was able to see through one eye with the aid of glasses but was legally blind in the other.

13. Plaintiff's visual impairments substantially limit multiple major life activities, including her ability to read or otherwise focus her vision, especially when viewing words on a screen.

14. Despite her visual limitations, Plaintiff worked diligently to overcome them and become a successful and proven structural designer of building trusses. By 2018, Plaintiff had amassed over twenty (20) years' experience as a building truss designer.

15. Plaintiff worked for Defendant out of its Midway, Georgia branch, from approximately May 2015 through March 2018.

16. In March 2018, Plaintiff resigned from her position because she thought Defendant was giving her more work than one could reasonably and realistically complete.

17. However, following her resignation, Plaintiff consulted an eye surgeon and learned that her eyesight was deteriorating rather aggressively and that she needed corrective eyeglasses immediately.

18. At that point, Plaintiff learned that her inability to handle the workload was not caused by the size of the workload, but rather, her significant and unrealized visual impairments.

19. Accordingly, in or around May 2018, Plaintiff sought, and secured, rehire with Defendant's Middlesex, North Carolina office.

20. Defendant hired Plaintiff as a structural designer, working from her home in Florida, but under the supervision of two of Defendant's Design Managers, Richard Allen ("Allen") and Jim Dunkl ("Dunkl").

21. During the re-hire process, Plaintiff disclosed the nature and extent of her visual deterioration through conversations with hiring personnel. Plaintiff also provided Defendant with her visual field charts and explained what the data in those charts represented.

22. Once hired, Plaintiff was to work off a production schedule, which resembled an excel spreadsheet. The production schedule was organized based on the date that each project was set to go into production.

23. The structural design teams' goal was to have the design work on each project completed at least three days before the date that project was set to go into production

24. The production schedule was regularly updated as new projects with varying production deadlines came in, or existing project deadlines were changed. As new projects came in, or existing production deadlines were changed, projects would be added to, or moved on, the production schedule similarly to how rows are

added or moved on an excel spreadsheet. This would happen on at least a daily basis and sometimes multiple times per day.

25. For designers with normal vision, these changes would be apparent and easily noticeable.

26. However, Plaintiff's visual impairments made it impossible for her to read the production schedule normally because she was unable to focus her vision on the spreadsheet without significant eye strain.

27. For Plaintiff to be able to read the production schedule, she would place a drafting triangle against her computer monitor to create a boarder along the bottom of the line she intended to read. She would then be able to focus on one small section of the row at a time, and she would hand write the details of the projects she was working on for the day. She would do this three times a day, every day – first thing in the morning, after lunch, and around 5:00 p.m.

28. Though reading the production schedule was a significant challenge for Plaintiff, usually occupying at least two hours of each day, her design work was exceptional, and she was able to perform all other aspects of her job normally.

29. However, because it was so difficult and painful for Plaintiff to focus on the schedule, it was impracticable for her to try to continuously monitor the schedule for updates like the other designers did.

30. Accordingly, during the re-hire process, Plaintiff requested assistance with keeping apprised of changes to the production schedule that required her immediate attention.

31. In response to Plaintiff's accommodation request, Dunkl agreed to send Plaintiff individual emails to notify her when an imminent deadline was changed, or a project was added to the schedule that she needed to immediately prioritize. This allowed Plaintiff to work efficiently without worrying about missing important schedule changes made throughout the day.

32. With the help of Dunkl's email notifications, Plaintiff produced high sales numbers and received excellent performance evaluations, culminating with a raise in February 2020.

33. However, in or around October 2019, Dunkl left his position with Defendant.

34. Following Dunkl's departure, Allen discontinued the policy of notifying Plaintiff of changes to the work schedule, forcing Plaintiff to have to spend significant periods of time reexamining the schedule's line items for changes to deadlines or new projects.

35. Between January 2020 and April 2020, Plaintiff notified Allen several times that she needed to be notified when schedule changes occurred, as she had been during the time with Dunkl.

36. However, Allen refused her requests to continue the reasonable accommodation that existed under Dunkl, telling her that he would never email her about schedule changes.

37. Allen's refusal to entertain Plaintiff's accommodation request caused Plaintiff to not receive sufficient notice of changes to the production schedule that required her immediate attention.

38. On or about April 10, 2020, Allen terminated Plaintiff's employment due to her disability, stating: "This thing with your eyes, I don't know. You had to have seen this coming. This is not going to work out. Your sales numbers are fine, that's not the issue. This decision was already made, paperwork's already started and there's no point continuing this conversation."

39. Plaintiff has retained the undersigned law firm and has agreed to pay a reasonable fee for its services.

## Count I – Failure to Accommodate Under The ADA

40. Plaintiff realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-39 of this Complaint.

41. Plaintiff is a qualified individual with a disability under the ADA.

42. Defendant violated the Americans with Disabilities Act by refusing to provide Plaintiff with reasonable accommodations in the workplace.

43. Defendant also failed to engage in the interactive process required by the ADA to provide an accommodation.

44. Defendant's discriminatory actions hindered Plaintiff's ability to perform her job, which led to the negative performance issues, and eventually her termination, as more fully described above.

45. Defendant's actions have caused and continue to cause Plaintiff to suffer damages, including damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be established at trial.

46. Because of Defendant's flagrant disregard of Plaintiff's federally protected rights against disability discrimination, Plaintiff is entitled to recover punitive damages to punish Defendant for its behavior.

WHEREFORE, Plaintiff, Lisa Schichtel, respectfully demands judgment against Defendant, any and all available relief under the ADA including, but not limited to back pay, reinstatement or front pay, compensatory damages, attorneys' fees and costs, prejudgment interest and such other relief as this Court deems just and proper.

## Count II – Disability Discrimination Under The ADA

47. Plaintiff realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-39 of this Complaint.

48. Following Jim Dunkl's departure, Defendant, through its agents and employees, began discriminating against Plaintiff by discontinuing the reasonable accommodation of notifying her of changes to the work schedule, which caused her termination, as more fully described above.

49. Defendant violated the ADA by intentionally discriminating against Plaintiff on the basis of her disability.

50. Defendant's actions have caused and continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be established at trial.

51. Because of Defendant's flagrant disregard of Plaintiff's federally protected rights against disability discrimination, Plaintiff is entitled to recover punitive damages to punish Defendant for its behavior.

WHEREFORE, Plaintiff, Lisa Schichtel, respectfully demands judgment against Defendant, any and all available relief under the ADA including, but not limited to back pay, reinstatement or front pay, compensatory damages, attorneys' fees and costs, prejudgment interest and such other relief as this Court deems just and proper.

## **Jury Trial Demand**

Plaintiff demands trial by jury on all issues so triable.

Dated this 1st day of November, 2021.

                              Respectfully submitted,

                              **Brenton Legal P.A.**
                              *Counsel for Plaintiff*
                              1070 E. Indiantown Rd., Suite 400
                              Jupiter, FL 33477
                              Phone: 954-639-4644

                              By: */s/ Travis Beal*
                                  Travis Beal
                                  Florida Bar No.: 104890
                                  tjb@brentonlegal.com
                                  Christopher A Fennell
                                  Florida Bar No. 113546
                                  caf@brentonlegal.com
                                  Ryan Brenton
                                  Florida Bar No.: 107675
                                  rcb@brentonlegal.com